**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| TANYA S. | : | |
| | : | |
| v. | : | NO. 25-CV-5915 |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of Social Security | : | |

**O P I N I O N**

SCOTT W. REID                                                DATE:  March 26, 2026
UNITED STATES MAGISTRATE JUDGE

Tanya S. brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  She has filed a Request for Review to which the Commissioner has responded.  As explained below, I conclude that the Request for Review should be denied and judgment granted in favor of the defendant.

I.      *Factual and Procedural Background*

Tanya S. was born on April 19, 1975.  Record at 229.  She completed high school.  Record at 287.  She worked in the past, but not recently enough for her employment to constitute past relevant work.  *Id*.; Record at 29.  On January 12, 2023, she filed applications for DIB and SSI.  Record at 229, 236.  In her application, she alleged disability since January 3, 2020, on the basis of post-traumatic stress syndrome ("PTSD"), depression, anxiety, difficulties in focusing and memory, substance abuse, hypothyroidism, osteoarthritis on the knees and back, a dislocated disc in the cervical spine, fibromyalgia, and swollen feet and legs.  Record at 229, 236, 286.

Tanya S.'s applications were denied initially on June 14, 2023.  Record at 87, 88.  On October 4 and 13, 2023, they were denied again upon reconsideration.  Record at 126, 127.

Tanya S. then sought review *de novo* before an Administrative Law Judge ("ALJ").

Record at 176.  A hearing was held in this matter on July 18, 2024.  Record at 37.  On October 7,

2024, however, the ALJ issued a written decision denying benefits.  Record at 14.  The Appeals

Council denied review, permitting the ALJ's decision to stand as the decision of the

Commissioner for Social Security.  Record at 1.  Tanya S. then filed this action.

II.    *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's

decision is supported by substantial evidence.  42 U.S.C. §405(g); *Richardson v. Perales*, 402

U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence

is relevant evidence which a reasonable mind might deem adequate to support a decision.

*Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied

the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*,

Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically

determinable basis for an impairment that prevents him from engaging in any 'substantial gainful

activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  Each case is evaluated by

the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii)  At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

2

Before going from the third to the fourth step, the Commissioner will assess a claimant's

residual functional capacity ("RFC") based on all the relevant medical and other evidence in the

case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any

limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.    *The ALJ's Decision and the Claimant's Request for Review*

In his decision, the ALJ determined that Tanya S. suffered from the severe impairments

of cervical and lumbar degenerative disc disease, osteoarthritis of the left knee, hypertension,

lymphedema, obesity, major depressive disorder, PTSD, and polysubstance use disorder. Record

at 16. He found, however, that no impairment, and no combination of impairments, met or

equaled the severity of a listed impairment. Record at 17.

The ALJ found that Tanya S. retained the RFC to engage in sedentary work with the

following limitations:

[S]he can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl but can never climb ladders, ropes, or scaffolds. She can tolerate occasional exposure to unprotected heights and moving mechanical parts. In addition, she can understand, remember, and perform simple and detailed but not complex instructions and is able to tolerate frequent interactions with supervisors, co-workers, and the public. Finally, any time off task can be accommodated by normal breaks.

Record at 20.

3

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ determined that jobs existed in the national economy which Tanya S. could perform, including order clerk, telephone information clerk, and lens inserter. Record at 29. He decided, therefore, that she was not disabled. Record at 30.

In her Request for Review, Tanya S. argues that the ALJ erred in failing to incorporate in his RFC assessment the sit/stand option imposed by Nurse Practitioner Abby Neely, whose report he otherwise accepted as persuasive. She also argues that the ALJ erred in failing to explain why he did not incorporate into the RFC assessments limitations imposed by the state agency reviewing psychologist, Timothy Ostrich, Psy.D.

IV.    *Discussion*

   A.    *The Sit/Stand Option*

Clearly, the ALJ accepted in great part the evidence Tanya S. presented regarding her physical limitations, since he found that she could only engage in a limited range of sedentary work. In doing so, he accepted as "mostly persuasive" an April 27, 2023, report provided by consulting independent medical expert Abby Neely, N.P. Record at 28.

Among other findings, N.P. Neely indicated that Tanya S. could sit for eight hours during an eight-hour workday, but that she could only sit for one hour at a time. Record at 867. Thus, she would need a job which permitted her to stand every hour before returning to a seated position. The ALJ did not mention a sit/stand option in his RFC assessment. Record at 20. Tonya S. argues that this was erroneous, since the ALJ otherwise accepted N.P. Neely's findings.

In fact, as noted above, the ALJ found N.P. Neely's report "mostly" persuasive. Record at 28. It could therefore be expected that he disagreed with N.P. Neely in some respects. This is consistent with the ALJ's duty to develop an RFC assessment based on all of the evidence of

record.  20 C.F.R. §§404.1546(c), 416.946(c).  Accordingly, the Court of Appeals for the Third Circuit has written, although in a non-precedential opinion:  "[N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight."  *Wilkinson v. Commissioner Soc. Sec.*, Civ. A. No. 22-1060, 558 Fed. App'x 254, 256 (3d Cir. 2014); *Rosa R. v. Bisignano*, Civ. A. No. 25-782, 2025 WL 356211 at *5 (E.D. Pa. Dec. 11, 2025) (citing *Wilkinson*); *Madonna v. Kijakazi*, 2023 WL 3483884 at *7 (E.D. Pa. May 16, 2023) (also citing *Wilkinson*).

In this case, the ALJ failed to articulate his differences with N.P. Neely.  However, remand for clarifiction is unnecessary.  At Tonya S.'s hearing, her counsel asked the vocational expert:  "If an individual needed to have a sit/stand option, would that eliminate any of the jobs at light or sedentary?"  The vocational expert responded:  "Certainly not the sedentary" and explained:  "As long as, you know, they're at their workstation, now, you can sit and stand with most employers.  They give them flexibility to do that."  Record at 74.  It is obvious, therefore, that remand would not change the result in this case.  *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).  Tanya S. is not entitled to relief on this claim.

      B.    *Dr. Ostrich*

In reviewing Tanya S.'s file on reconsideration, state agency mental health expert Timothy Ostrich, Psy.D., indicated that she was not significantly limited in the ability to carry out even detailed instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision;  and the ability to make simple work-related decisions.  Record at 109.  He indicated, however, that Tanya S. had moderate limitations in the ability to maintain attention and concentration for extended periods; to work in coordination with or in proximity to others

without being distracted by them; and in the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id*.

Nevertheless, Dr. Ostrich wrote: "The claimant is capable of performing tasks within a schedule and at a consistent pace. She can make simple decisions. She would be able to maintain regular attendance and be punctual." *Id*. He checked off that Tanya S. had no social interaction limitations, and no adaptation limitations. *Id*.

The ALJ found Dr. Ostrich's conclusions "persuasive." Record at 27. He wrote that they were generally consistent with the records from Tanya S.'s substance abuse treatment, and with her presentation during her 2023 psychological consultative examination by Julia Loytsker-Borish, Psy.D. *Id*. Tanya S. argues that, this being the case, the ALJ erred in failing to explain why he did not include limitations in the RFC assessment to accommodate Dr. Ostrich's findings of moderate impairment.

As above, the ALJ was not compelled to incorporate every one of Dr. Ostrich's findings into his RFC assessment simply because he found the report persuasive as a whole. *Wilkinson*, *supra*. In any event, the ALJ did include some limitations regarding concentration and interaction with others in that he limited Tanya S. to work involving "simple and detailed but not complex" instructions, and said she could frequently – but not constantly – interact with supervisors, co-workers and the public. Record 20. This was roughly consistent with Dr. Ostrich's report as a whole; despite finding some moderate limitations, Dr. Ostrich concluded that Tanya S. had no adaptation or social-interaction limitations. Record at 109.

6

Further, the ALJ was entitled to rely on the findings and examination results of Dr. Loytsker-Borish, who met with Tanya S., unlike Dr. Ostrich, who only reviewed her records. On May 1, 2023, Dr. Loytsker-Borish observed Tanya S. to be cooperative, with an adequate manner of relating. Record at 891. She was disheveled, but her hygiene and grooming were "satisfactory." Record at 892. Tanya S. cried throughout the interview, but her thought processes were coherent and goal directed, with no hallucinations, delusions, or paranoia, and she had a full range of affect. *Id*. Her concentration and memory were mildly impaired. *Id*.

Dr. Loytsker-Borish concluded that Tanya S. was mildly limited in the ability to understand and carry out simple instructions. Record at 895. She also found that Tanya S. was only mildly impaired in the ability to interact with the public, supervisors, and co-workers, and the ability to respond appropriately to usual work situations and to changes in a routine work setting. Record at 896. The ALJ found her assessment persuasive. Record at 28.

Moreover, at the second stage of the sequential evaluation, the ALJ explained in detail why he found Tanya S. to have only mild limitations in interacting with others:

> At the hearing, she reported avoiding social interactions but also attending regular treatment. In her Function Report, she stated that she has some trouble getting along with others as her pain makes her irritable and that she is somewhat able to get along with authority figures. She reported living with family and friends, attending treatment, managing her personal care, being able to go out alone, shopping in stores and by phone, and regularly interacting with her family by telephone and video chat. [Citing the Function Report at pages 302-312 of the Record]. At the consultative examination, she reported that she does not have any friends but has relationships with her family. She reported social isolation and difficulty being in large groups. On mental status examination, she was cooperative with [an] adequate manner of relating, disheveled appearance, satisfactory grooming, normal posture and motor behavior, appropriate eye contact, adequate language skills, full range and appropriate affect, and full orientation. [Citing Dr. Loytsker-Borish's report]. Therefore, the undersigned finds that the claimant's mental impairments have resulted in no more than a mild limitation in her ability to interact with others.

Record at 18. Thus, he explained why the RFC limitations in interaction were only mild.

The ALJ also discussed in detail how he concluded that Tanya S. had no more than a moderate limitation in concentration:

> Regarding concentration, persisting, or maintaining pace, the claimant has a moderate limitation. At the hearing, she testified that she has difficulty with memory and focus. In her Function Report she reported trouble with memory, task completion, concentration, understanding, and following instructions. She also reported that she needs reminders to attend treatment and is always distracted. [Citing the Function Report; Record at 301-312]. During the consultative examination, she reported that she does not manage her finances and has lost interest in past hobbies. She reported distractibility, fatigue, poor concentration, trouble with organization and planning, and not finishing things she starts. On mental status examination, she displayed mildly impaired attention, concentration, and memory skills due to emotional distress. Therefore, the undersigned finds that the claimant's mental impairments have resulted in a moderate limitation in her functioning in this area. However, her limitation has not risen to the marked level as she also testified that she attends to her personal care, does household tasks and cooking, and attends regular treatment. In her Function Report, she indicated that she attends to her personal care, prepares her own meals, does some dishes and laundry, drives, shops in stores and on line, manages her finances, and attends treatment. [Again, citing the Function Report]. At the consultative examination, she reported attending to her personal care, cooking, and doing general cleaning laundry, and shopping. On mental status examination, she was cooperative with satisfactory grooming; normal posture and motor behavior; appropriate eye contact; adequate language skills; coherent and goal directed thought processes; normal thought content; and full orientation. [Citing Dr. Loytsker-Borish's report].

Record at 18-19. Thus, the ALJ explained why he limited Tanya S. to work involving simple and detailed, but not complex, instructions, but did not further limit her. Record at 20.

On this record, it is not possible to accept Tanya S.'s argument that the ALJ failed to provide an adequate explanation of the way in which his RFC assessment was supported by substantial evidence, including the medical opinions. It is not even clear that the ALJ had any meaningful disagreement with Dr. Ostrich, who found Tanya S. to have no limitations in social interaction. Therefore, there is no basis for relief on Tanya S.'s second and final claim.

V.      *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*

_____

SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE